# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ADAM RANEY,

                Plaintiff,

v.                                                    Case No. 24-CV-487

LOGAN GOEHL, et al.,

                Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

Plaintiff Adam Raney, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 3.) Raney was allowed to proceed on an Eighth Amendment deliberate indifference to medical needs claim against the defendants for failing to get Raney medical help. (Docket # 12.) The defendants moved for partial summary judgment on the grounds that Raney failed to exhaust his administrative remedies as to defendant Nurse Megan Leberak. (Docket # 17.) That motion is fully briefed and ready for a decision. For the reasons stated below, the defendants' motion for partial summary judgment on exhaustion grounds is denied.

### PRELIMINARY MATTERS

On November 6, 2024, after the defendants' motion for partial summary judgment on exhaustion grounds was fully briefed, Raney filed a sur-reply. (Docket # 24.) He did not file a motion for leave to file a sur-reply. Whether to grant a party leave to file a sur-reply brief is a question within the court's discretion. "The decision to permit the filing of a surreply is

purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3 626, 631 n.2 (7th Cir. 2010)). Here, because Raney did not move for leave to file a sur-reply, and because, after review, it is clear that the sur-reply does not add any additional relevant information that would aid in the Court's decision, I will disregard Raney's sur-reply.

## FACTS

Raney states that on March 25, 2023, he told an officer that he was having chest pains and feeling nauseous. (Docket # 7 at 2–5.) Despite being told that he would receive medical care right away, it was several hours before Raney got medical attention. (*Id.*) Raney alleges that the defendant officers were ignoring his symptoms and his calls for help. (*Id.*)

Raney finally saw Nurse Leberak, who allegedly told him she was very busy and rushed his examination. (Docket # 7 at 5–7.) He alleges that instead of focusing on his heart attack symptoms, she focused on the bump on his head. (*Id.*) When Raney stated he felt like he was having a heart attack because he experienced chest pain, had vomited, and had arm pain, Leberak allegedly told him that he was merely experiencing a panic attack. (*Id.*)

It is undisputed that only one inmate complaint is relevant to Raney's claims. On April 4, 2023, the Institution Complaint Examiner's ("ICE") Office received an inmate complaint from Raney wherein he complained that he did not receive timely medical care on March 25, 2023. (Docket # 22-1 at 3.) On April 8, 2023, the ICE sent Raney a letter explaining that his inmate complaint was being returned because it was not submitted on the appropriate form and it contained more than one "clearly identified issue." (Docket # 20-3 at 1.) Raney was informed that his "return is still being held to the 14-day time limit." (*Id.*)

On April 11, 2023, the ICE received Raney's resubmitted inmate complaint. (Docket # 20-2 at 8.) Raney stated, "I was not given medical attention when I needed it and I was injured." (*Id.*) He described how he repeatedly told the defendant security officers that he was experiencing heart attack symptoms, but they did not get him medical care for hours. (*Id.*) He then states that he was finally taken "to see the nurse, she noted a lump on my head. She said I had an anxiety attack after taking my vitals." (*Id.*)

On June 1, 2023, the ICE rejected Raney's inmate complaint because it was sent more than 14 days after the event that gave rise to the inmate complaint. (Docket # 20-2 at 2.) The ICE received Raney's appeal of the rejection on June 12, 2023. (*Id.* at 10.) Raney explained that he received the rejection letter on April 10, 2023, and he fixed the errors "listed on the return letter" and gave the re-submitted complaint to a security officer for mailing that same day. (*Id.*) He further noted that his original complaint was timely submitted on April 1, 2023. (*Id.*) The reviewing authority upheld the ICE's rejection, stating that it was properly rejected for being outside the original 14-day time limit (*i.e.* 14 days from the date of the incident). (*Id.* at 5.) In their brief in support of their motion for partial summary judgment on exhaustion grounds, the defendants conceded that both the ICE's decision and the reviewing authority's decision finding the re-submitted complaint as submitted outside the 14-day window contradicts the procedural rules regarding inmate complaints. (Docket # 18 at 9.) Specifically, pursuant to Wis. Admin. Code § DOC 310.10(5), the ICE "shall grant 10 days for receipt of the corrected complaint" after a complaint is returned. (*Id.*) In short, Raney should have had 10 days from the date he received the return letter to re-submit the inmate complaint, which the defendants concede he did not receive.

3

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

# ANALYSIS

## 1.  Applicable Law and Procedure on Exhaustion

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A prisoner can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison

5

administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

The Wisconsin Department of Corrections' procedures for prisoners exhausting administrative remedies are contained in Wis. Admin. Code Ch. DOC 310 (2018). "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin Code § DOC 310.01(1). The Inmate Complaint Review System ("ICRS") is the main process an inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner ("ICE") may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)–(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the Reviewing Authority. Wis. Admin. Code § DOC 310.10(12). The Reviewing Authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)–(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner ("CCE"). Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The CCE then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

2. *Application to this Case*

The defendants argue that Raney did not properly exhaust his administrative remedies because his grievance did not specifically detail Nurse Leberak's actions. They also argue that even though it was improperly rejected as untimely, the re-submitted complaint also would have been rejected regardless of the error because it contained more than one clearly defined issue contrary to the procedure. Raney argues that his inmate complaint did mention Nurse Leberak's actions, and had the ICE properly handled the inmate complaint, an investigation

7

would have necessarily involved looking into what care Nurse Leberak provided. (Docket # 22 at 2.)

The defendants characterize Raney's argument about the mishandling of the inmate complaint as a futility argument—that Raney is arguing he did not need to file another inmate complaint about Nurse Leberak because he knew that ICE would mishandle it. (Docket # 23 at 2.) The defendants misconstrue Raney's argument. Raney argues that had ICE properly accepted the resubmitted inmate grievance as timely and investigated it, the institution would have been made aware of Nurse Leberak's actions. The court notes that Raney's resubmitted complaint explicitly states "At 325 I saw an officer who took me to see the nurse. She noted a lump on my head. She said I had an anxiety attack after taking my vitals." (ECF No. 20-2 at 8.)

It is undisputed that Raney followed the correct procedure in resubmitting his inmate complaint. He received a return letter on April 10 noting that his inmate complaint was being returned because he used the wrong from and because his submission had more than one issue. (ECF No. 20-3, ECF No. 20-2 at 10.) The same day he received it, April 10, he states he fixed the errors in the original complaint and re-submitted it. (ECF No. 20-2 at 10.) The ICE then rejected the inmate complaint for being submitted 14 days after the original incident occurred. Raney, then appealed the rejection, noting that he submitted it within the 10-day window as required by Wis. Admin. Code § DOC 310.10(5)). The defendants concede that the ICE improperly rejected the resubmitted grievance as untimely. The re-submitted complaint was rejected because it was submitted 14 days after the original incident occurred. This was improper. It should have been accepted because Raney resubmitted it within the 10-day window as the procedure allows. Where a prisoner "properly followed procedure and

8

Case 2:24-cv-00487-NJ    Filed 05/30/25    Page 8 of 10    Document 30

prison officials were responsible for the mishandling of his grievance, it cannot be said that [the plaintiff] failed to exhaust his administrative remedies." *Dole*, 438 F.3d at 811. "A remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance." *Id.* at 809. Here, it is undisputed that Raney properly followed the procedure as it relates to returned complaints, including appealing the rejection. It was the institution's error—improperly rejecting the resubmitted complaint as untimely and upholding the rejection on appeal—that resulted in Raney's inmate complaint from not being considered on the merits.

The defendants' argument pursuant to *Schillinger v. Kiley*, 954 F.3d 990 (2020)—that Raney's re-submitted inmate complaint did not provide sufficient detail about Leberak's actions and raised more than one issue—is misplaced. First, Raney clearly mentions Lebrak's treatment in the re-submitted inmate complaint, noting she treated the lump on his head and diagnosed him with a panic attack. (ECF No. 20-2 at 8.) Second, the institution never reached the point where it considered whether the re-submitted inmate complaint contained more than one clearly identified issue or whether the issues were not clearly identified because it improperly rejected the re-submitted inmate complaint for untimeliness.

In short, by improperly rejecting the re-submitted inmate complaint, the institution rendered the grievance process "unavailable" to Raney because their mistake prevented Raney's re-submitted complaint from being considered on the merits (or found deficient for other procedural reasons). *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Dole*, 438 F.3d at 809. Once the appeal of the rejection was upheld, Raney had no additional recourse. Typically, where "prison officials reject a grievance for failing to comply with a procedural requirement and they decline to address the merits of the grievance, the general rule is that the prisoner has not exhausted his administrative remedies." *Jones v. Frank*, Case No. 07-cv-

9

141-bbc, 2002 WL 4190322 at *2 (W.D. Wis. April 14, 2008). However, the plaintiff "would escape the consequences of the general rule if the procedural requirement at issue prevents him from obtaining a meaningful opportunity to present his grievance." *Id.* at *3 (quotations omitted). If "administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba*, 458 F.3d at 684. For these reasons, the defendants' motion for partial summary judgment on exhaustion grounds is denied.

## CONCLUSION

For the reasons stated above, because the exhaustion process was rendered unavailable to Raney, he was unable to exhaust his administrative remedies. The defendants' motion for partial summary judgment on exhaustion grounds is denied. The Court will issue an amended scheduling order at a later date.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 17) is **DENIED**.

Dated at Milwaukee, Wisconsin this 30th day of May, 2025.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge